*United States Bankruptcy Court*
*District of New Jersey*
*Clarkson S. Fisher Federal Building*
*United States Courthouse*
*402 East State Street*
*Trenton, New Jersey 08608*

*Hon. Kathryn C. Ferguson, USBJ*                                                                                   *(609) 858-9351*

April 17, 2014

Richard Brihn, Pro Se
877 Edinburgh Road
Hamilton, New Jersey 08690

Lance Brown, Esquire
Lance Brown & Associates
1 AAA Drive – Suite 205
Trenton, New Jersey 08691

                                                        Re:     Mark A. and Joni L. Truch
                                                                    Case No. 11-33528

                                                                    Richard W. Brihn vs.
                                                                    Mark A. and Joni L. Truch
                                                                    Adversary No. 2-1631

                                                                    Trial: January 15, 2014

Dear Mr. Brihn and Mr. Brown:

      At the close of Mr. Brihn's case on January 15, 2014, the Truch's counsel made a motion for a directed verdict.[1] The court issues the following findings of fact and conclusions of law resolving that motion.

      Before the court can address the substance of the motion, it must clarify the causes of action alleged in the complaint. Mr. Brihn, representing himself, filed a document[2] in June 2012

---

[1]Transcript at 116

"contesting the dis-chargeability of the Truch's debt owed to creditor Richard W Brihn." The only law cited in the complaint is "11 USC 523 of the bankruptcy code".[3] Mr. Brihn seeks total damages in the amount of $400,000.[4]

The complaint contains five counts. The First and Second Counts do not specify any causes of action; rather, they contain factual allegations in support of Mr. Truch's claim that "Mark and Joni Truch have conspired to defraud and embezzle cash money, real-estate, and unpaid credit card debt in excess of $100,000 ...."[5] The Third Count also fails to allege a cause of action precisely but, allowing Mr. Brihn some leeway as a self-represented party, the court can find that the Third Count seeks a judgment that Mr. Brihn is the equitable owner of 50% of the properties at 112 Hazelhurst Ave. in Ewing and 1832 Greenwood Ave. in Trenton. The Fourth and Fifth Counts of the complaint address some of the categories of damages that Mr. Brihn seeks. Overall, the court finds that the language of the complaint can fairly be read to allege causes of action under 11 U.S.C. § 523(a)(2)(A) and (a)(4).[6]

The motion before the court is for a directed verdict. Like the complaint, the motion also needs some clarification. The term "directed verdict" is no longer used in the federal courts. The term had previously been used in Federal Rule of Civil Procedure 50, but in 1991 the term was changed to "judgment as a matter of law". Under either formulation, it is still not applicable in this case because Rule 50 applies only to jury trials, and this is a bench trial. Federal Rule of

---

[2] The document did not identify itself as a complaint, but the court determined that was the intent of the submission and docketed it as a complaint objecting to dischargeability.

[3] Complaint at 1

[4] On page four of the complaint it provides: "Total amount I am seeking is $4000.000.00 to date" (mistakes in the original). At trial, Mr. Brihn clarified that he was seeking $400K not $4 million in damages.

[5] Complaint at 1

[6] Mr. Brihn's statement of Disputed Facts and Findings filed on January 14, 2015, refers to 523(a)(4), 523(a)(2) and 523(a)(6). The court finds that the language of the complaint fails to sufficiently allege even a cause of action under 11 U.S.C. § 523(a)(6).

Civil Procedure 50(a), which is incorporated into bankruptcy cases through Federal Rule of Bankruptcy Procedure 9015(a), does not allow for judgment as a matter of law outside the context of a jury trial.[7] Because this matter is being tried without a jury, the court will regard the Truchs' motion for a directed verdict as a motion brought under Federal Rule of Civil Procedure 52(c), which is incorporated into bankruptcy cases through Federal Rule of Bankruptcy Procedure 7052. Federal Rule of Civil Procedure 52(c), which is entitled "Judgment on Partial Findings," provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

With those procedural matters out of the way, the court turns to the allegations in the Third Count of the complaint. The count alleges that Mr. Brihn is the 50% owner of properties located at 112 Hazelhurst Avenue in Ewing and 1832 Greenwood Avenue in Trenton. It alleges that Richard Brihn and Mark Truch purchased 112 Hazelhurst in 2008, and that the property is listed on the parties' 2008 partnership tax return as jointly owned property. The complaint further alleges that Mr. Brihn and Mr. Truch purchased 1832 Greenwood in January 2009, using money withdrawn from the parties' joint bank account.

On cross-examination, Mr. Brihn acknowledged that title to 112 Hazelhurst is held in the name of Joan Bucsku, Joni Truch's mother.[8] Mr. Brihn further acknowledged that he had not named Joan Bucsku as a defendant in the complaint, nor had he put her on notice of the trial.[9] The fact that Joan Bucsku is the sole title owner of 112 Hazelhurst is further established by the

---

[7] Rego v. ARC Water Treatment Co. of Pennsylvania, 181 F.3d 396, 401 (3d Cir. 1999) ("Rule 50(a) applies in jury trials and Rule 52(c) applies in non-jury trials.")
[8] Transcript at 29
[9] Id.

Interim Property Management Agreement.[10] That Agreement, signed by Mr. Brihn and Mr. Truch, states that "it is hereby acknowledged that Joan Bucsku is the title owner of 112 Hazelhurst Avenue and is planning to reside at said property."[11]

It is beyond debate that Joan Bucsku was entitled to formal notice of this proceeding. Mr. Brihn is attempting to divest her of a 50% interest in property without even naming her as a defendant in the action. That violates basic notions of fairness. This court cannot enter a judgment that affects the rights of the title owner of property without having that person as a named party. Bankruptcy courts are courts of limited jurisdiction[12] and unless Joan Bucsku is a named defendant, this court does not have jurisdiction over her or her property.

Similar jurisdictional problems exist with respect to the property at 1832 Greenwood Avenue. Mark Truch is the sole title owner of 1832 Greenwood.[13] The property was listed in Schedule A of his bankruptcy petition. As a result, the bankruptcy trustee is an indispensable party to this action. Mr. Brihn is attempting to assert an ownership right to an asset that is property of the bankruptcy estate.[14] Only the bankruptcy trustee has standing to litigate a cause of action seeking equitable ownership of property of the bankruptcy estate. Andrea Dobin, the Chapter 7 trustee in this case, was not named as a defendant in this adversary proceeding.

Moreover, amending the complaint to add the Chapter 7 trustee as a defendant would not be practical at this point. M&T Bank, the holder of the mortgage on the property, filed a motion for relief from the automatic stay. M&T Bank and the Trustee entered into a consent order that

---

[10] Plaintiff's Exhibit A
[11] Plaintiff's Exhibit A at 2
[12] 28 U.S.C. § 1334
[13] *Amended Pre-Trial Memo* at 2, ¶ 8 (joint stipulation of undisputed facts)
[14] 11 U.S.C. § 541(a) provides that the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."

gave the Trustee until October 1, 2012 to sell the property. If a sale had not closed by that date, the motion would be relisted pursuant to the consent order. The motion was relisted and on November 19, 2012, M&T Bank was granted relief from the automatic stay to continue its foreclosure action against the property in state court. On the same date, the Trustee's notice of abandonment[15] of the estate's interest in 1832 Greenwood Avenue became effective. Abandonment of property ends the bankruptcy court's jurisdiction to determine disputes concerning the property, unless the result of the dispute could have some effect on the bankruptcy case.[16] Here, the dispute over 1832 Greenwood would not have any effect on the bankruptcy case because there is no equity in the property.

As a result of the failure to name Joan Bucsku and the Chapter 7 trustee as defendants in this adversary proceeding, this court lacks jurisdiction to enter judgment as requested in the Third Count of this complaint. The count must be dismissed for lack of both personal and subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and (2).

The court will now consider the cause of action based on 11 U.S.C. § 523(a)(4), which excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Supreme Court recently considered the meaning of this exception to discharge in Bullock v. BankChampaign, N.A..[17] The Supreme Court emphasized that the four items listed in § 523(a)(4) should not be treated as identical for purposes of determining an exception to discharge. The Court stated:

> As commonly used, "embezzlement" requires conversion, and "larceny" requires taking and carrying away another's property. See LaFave, Criminal Law §§ 19.2, 19.5 (larceny); id., § 19.6 (embezzlement). "Fraud" typically requires a false statement or omission. See

---

[15] 11 U.S.C. § 554(a) "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."
[16] In re Salander, 472 B.R. 213 (Bankr. S.D.N.Y. 2012)
[17] -- U.S. --, 133 S. Ct. 1754 (2013)

id., § 19.7 (discussing fraud in the context of false pretenses). "Defalcation," as commonly used (hence as Congress might have understood it), can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity.

Mr. Brihn could prevail if he establishes any of the four alternatives under §523(a)(4).

The court will first consider embezzlement and larceny. These exceptions to discharge have one important thing in common: they require the accused to have, at some point, been in possession of the property of another.[18] The court surmises that is why the Truchs submitted as one of the disputed issues for trial that "It is disputed that rents were collected."[19] And had the court only considered the evidence presented by Mr. Brihn, the court would have granted the Rule 52(c) motion and dismissed the embezzlement and larceny causes of action under § 523(a)(4). Mr. Brihn failed to establish that Mark Truch ever collected rents for the five properties he was entrusted with under the Interim Property Management Agreement. Mr. Brihn submitted no documentary evidence to establish this point, and the testimony he elicited from Mr. Truch on this issue was vague and contradictory. A typical example of the testimony concerning the rents is as follows:

> *Mr. Brihn questioning Mr. Truch*
>
> Q: So your testimony today is that you don't know if you collected rents for the properties; you don't remember about the rents for those three properties?
>
> A: I may have.
>
> Q: But you don't know?
>
> A: I'm not sure. No, I'm not sure. I would be giving you an answer that I'm not sure of.[20]

---

[18] *See, e.g.,* In re Sandoval, 341 B.R. 282 (Bankr. C.D. Cal. 2006)
[19] *Amended Pre-Trial Memo* at 2, ¶ 3
[20] Transcript at 82 - 83

Joni Truch testified that the Truchs collected rents on the properties subject to the Interim Property Management Agreement, but she was unable to recall the amounts collected. On cross-examination, Ms. Truch confirmed that the amounts provided in exhibit J were an accurate representation of the rents they collected.[21] Ms. Truch also testified that the rents were not applied in accordance with the Interim Property Management Agreement.[22] Based on Ms. Truch's testimony and the documentary evidence submitted by the Truchs, the court finds that the Truchs had possession of the rents.

Both embezzlement and larceny, as used in section 523(a)(4), are to be determined with reference to federal common law.[23] Embezzlement under § 523(a)(4) has been defined as "the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come."[24] To prove embezzlement, the creditor must show that the debtor appropriated the subject funds for his own benefit and did so with fraudulent intent or deceit. No fiduciary relationship needs to be established in order to find a debt nondischargeable by an act of embezzlement. Larceny under § 523(a)(4) requires a showing that the debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to its own use without the owner's consent.[25] Embezzlement differs from larceny only in that the original taking was lawful, or at least with the consent of the owner, unlike larceny, where there is a requirement that felonious intent exists at the time of the taking.[26]

---

[21] Transcript at 107
[22] Transcript at 92; 103
[23] In re Steele, 2005 WL 281154, at *3 (Bankr. E.D. Pa. 2005); In re Jardula, 122 B.R. 649 (Bankr. E.D.N.Y. 1990).
[24] In re Fuget, 339 B.R. 702 (Bankr. S.D. Iowa 2006) (internal citations omitted)
[25] In re Burke, 416 B.R. 136 (Bankr. E.D. Pa. 2009)
[26] In re House, 2007 WL 2126260, at *4 (Bankr. N.D. Ill. 2007)

Based on that definition of larceny, the court must grant the Rule 52(c) motion. Mr. Brihn does not even allege that the Truchs unlawfully took the rent money, he merely claims that they did not apply the rent money in accordance with the Agreement. Therefore an essential element of the cause of action is missing.

As for embezzlement, the timing element is correct but the court finds that Mr. Brihn has failed to establish felonious intent. To prove embezzlement, Mr. Brihn had to establish that the Truchs appropriated the rent money with an intent to deceive him. The testimony elicited at trial falls far short of establishing intent. Mark Truch was unable to testify to any degree of certainty that he had even received any rent money, much less that he took the rent money as part of an intentional plot to defraud Mr. Brihn. Mark Truch testified that he relied on his wife to handle financial matters. Joni Truch testified that the properties had never made any money and that she did not believe that she was required to use her personal funds to prop up these losing investments. Joni Truch convincingly testified that she believed that she had a right to retain the rent money that had been collected as repayment for loans to the partnership. Regardless of whether she was correct, Joni's belief that she had the right to act as she did undermines a finding that she acted with intent to deceive Mr. Brihn. Mr. Brihn himself recognized the sincerity of Joni's belief when he asked her:

> Q: So while you were bookkeeper of these properties under this interim property management agreement that I had and your husband signed you diverted the monies instead of putting it in the trust as we agreed to, you diverted them to yourself because you felt you were owed monies and stopped paying the mortgages and had a plan to start again somewhere down the line without sharing that information on a monthly basis to the attorney?
>
> A: Correct.[27]

---

[27] Transcript at 106

The court will also grant the Rule 52(c) motion for the embezzlement aspect of the § 523(a)(4) cause of action.

The remaining two causes of action under § 523(a)(4) also have an element in common: the fraud or defalcation must be done "while acting in a fiduciary capacity." At trial, the court deferred on ruling on which party had the burden of proof under § 523(a)(4). Mr. Brihn contends that once he established that the Truchs were acting as fiduciaries, the burden shifted to them. Mr. Brihn stated that he was relying on the discussion of the burden of proof contained in the bankruptcy treatise Collier on Bankruptcy. The Collier treatise notes that while most courts apply the general rule that creditors bear the burden of proving all aspects of § 523(a)(4), the Ninth Circuit Court of Appeals goes off in its own direction and applies the common law principal that the burden shifts after a fiduciary relationship is established. What Mr. Brihn fails to consider; however, is that Collier calls the Ninth Circuit's position "questionable" and notes that it is inconsistent with the Supreme Court's jurisprudence in other discharge sections.[28] This court is not bound by the rulings of the Ninth Circuit Court of Appeals. This court must apply the precedent set by the Third Circuit Court of Appeals, and the Third Circuit has consistently held that the creditor "carries the burden of establishing embezzlement, larceny, or willful and malicious injury by a preponderance of the evidence."[29] Accordingly, Mr. Brihn bears the burden of establishing all of the elements of his causes of action.

The definition of "fiduciary capacity" is narrower in bankruptcy than in other contexts.[30] But even under a restrictive reading of the term, the court can easily conclude that the Interim Property Management Agreement imposed a fiduciary duty on the parties. The Agreement

---

[28] *Collier on Bankruptcy* ¶ 523.10[1][c] (16th ed.)
[29] In re Schlessinger, 208 Fed. Appx. 131 (3d Cir. 2006), *citing*, Grogan v. Garner, 498 U.S. 279 (1991)
[30] In re Blaszak, 397 F.3d 386 (6th Cir. 2005)

clearly defined the property that was the subject of the trust, as well as the duties of the parties.[31] As part of the motion for a directed verdict, Mr. Brown asked the court to dismiss the § 523(a)(4) count against Joni Truch because "she was not a party to the fiduciary agreement".[32] Joni Truch was not a party to the Agreement, but she testified that "I didn't sign this document but I took responsibility for it for Mark."[33] Based on Joni Truch's own testimony, the court finds that she made herself a party to the fiduciary agreement and will not dismiss the counts for failure to state a claim against Joni Truch.

Once it is determined that the Truchs were acting in a fiduciary capacity, the next question is whether they committed fraud or defalcation. Once again, Mr. Brihn encounters the same proof problem he had with larceny and embezzlement. Court have interpreted "fraud" for purposes of §523(a)(4) as involving intentional deceit, rather than implied or constructive fraud.[34] Defalcation in this context means the failure to produce funds entrusted to a fiduciary. Until recently, courts were divided as to whether an innocent mistake counted or whether the debtor had to have scienter. The Supreme Court has now clarified that defalcation under § 523(a)(4) requires "a culpable state of mind" with a "knowledge of, or gross recklessness in respect to the improper nature of the relevant fiduciary behavior."[35] For the reasons previously discussed, the court finds that the Truchs did not possess a culpable state of mind with regard to the application of the rents. The court will grant the Rule 52(c) motion as to the fraud and defalcation aspects. The court finds that Mr. Brihn did not sustain his burden of proof with

---

[31] *See,* In re Strack, 524 F.3d 493 (4th Cir. 2008)
[32] Tr. at 117
[33] Transcript at 99 – 100
[34] In re Tyson, 450 B.R. 514 (Bankr. E.D. Pa. 2011)
[35] Bullock v. BankChampaign, N.A., 133 S. Ct. 1754 (2013)

10

regard to any of the four alternatives, and will dismiss the §523(a)(4) cause of action in its entirety.

The final cause of action asserted in the complaint was for fraud under § 523(a)(2)(A). To successfully challenge the dischargeability of debt under § 523(a)(2)(A) the creditor must establish that: (1) the debtor made the representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) the creditor justifiably relied on the debtor's false representations; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made.[36] Once again, Mr. Brihn's proofs do not establish that the Truchs acted with the intent and purpose of deceiving him. Because all of the elements of a cause of action must be satisfied, the failure to prove intent means the Rule 52(c) motion must be granted and the cause of action dismissed.

The court also notes that Mr. Brihn failed to establish damages. Damages are an element of both the § 523(a)(4) and (a)(2) causes of action.[37] Based on the record established at trial, the court cannot determine if Mr. Brihn suffered any damages at all. Mr. Brihn's demand for damages fails to account for the costs associated with the property. Any damages Mr. Brihn might be entitled to from the diverted or uncollected rents would have to be reduced by the costs (such as mortgage, insurance, repairs, taxes) to arrive at a net figure. Mr. Brihn provided the court with no evidence from which that net figure could be adduced. The evidence placed into the record by the Truchs supports a finding that the properties were not generating a profit. The partnership tax return for 2008, the last year the partnership was supposedly operating properly,

---

[36] In re Feldman, 506 B.R. 222 (Bankr. E.D. Pa. 2014)
[37] See, Konover Const. Corp. v. East Coast Const. Services Corp., 420 F. Supp. 2d 366 (D.N.J. 2006)

shows a loss of $19,582.[38] Mr. Brihn also fails to account for the benefit he received when the Chapter 7 Trustee avoided the unrecorded mortgages on the property thereby generating equity for him. The amounts the Chapter 7 trustee paid to him for the sale of three of the properties would have to be deducted from any damage claim. Any loans made to the partnership would also have to be considered in ascertaining damages.

Mr. Brihn's request for damages is based on a fundamentally flawed understanding of the categories of damages that are available, and the level of proof needed to establish them. Mr. Brihn believed he was entitled to be compensated for the income the properties would have generated for the next 15 years. While that category of damages, known as lost profit damages, is theoretically available, the amount of such damages must be established with reasonable certainty.[39] Mr. Brihn has failed to do that because he has not even established that there was positive cash flow from the properties. The failure to prove the damage element is an additional reason the court must dismiss these causes of action. The complaint also sought attorney's fees and punitive damages of three times the debt owed. An award of attorney's fees is only available in limited circumstances such as when it is provided for by contract or statute or a party disobeys a court order.[40] Those circumstances do not pertain here. The request for triple damages is likewise not supported by any law, and § 523 does not provide for treble damages.

It was unclear if the Truchs considered their counterclaim to be part of the Rule 52(c) motion, but because it involves a standing issue, the court will address it. The Truchs' counterclaim states that the "Debtors seek the amounts wrongfully appropriated to be re-included

---

[38] Plaintiff's Exhibit C
[39] Tridon Industries, Inc. v. Willis Chevrolet, 2014 WL 1338678 (D. Del. April 1, 2014)
[40] In re Palermo, 2007 WL 4276831 (Bankr. S.D.N.Y. 2007)

in the debtors estate."[41] The Debtors do not have standing to bring a claim on behalf of the estate, only the Chapter 7 trustee may do that.  Therefore, the court will dismiss the counterclaim.

## Conclusion

The court is granting the Truch's Rule 52(c) motion and will dismiss the complaint for the reasons stated.  Counsel for the Defendants are directed to submit a form of order in accordance with this opinion.

/s/ *Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

---

[41] *Answer to Complaint and Counter-Complaint* at 2